IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 04-cv-02408 - LTB - MEH

LUIS OCHOA,

      Plaintiff,

v.

SWIFT & COMPANY,

      Defendant.

_____

ORDER

_____

This case is before me on Defendant Swift & Company's ("Swift") Motion for Summary Judgment. In this motion, Swift argues that it is entitled to judgment as a matter of law on Plaintiff Luis Ochoa's ("Ochoa") claims for employment discrimination based on national origin and for retaliation. After consideration of the motion and all related pleadings, as well as the case file, I deny the motion for the following reasons.

## I. Facts

1. Ochoa, who is of Hispanic/Mexican origin and speaks both Spanish and English, began working as a production mechanic at Swift on February 11, 2002. The essential job function requirements of this position as listed in Swift's written "Physical Demand Assessment" included the frequent carrying or lifting of objects weighing up to 60 pounds more than 40 times per hour. As a production mechanic, Ochoa was also required to communicate with his fellow employees over a two-way radio.

2.  In May of 2003, Ochoa injured his right wrist on the job and received medical restrictions.  Ochoa's restrictions limited him to occasionally lifting up to 50 pounds with his right wrist, frequently lifting up to 20 pounds with his right wrist, and constantly lifting up to 10 pounds with his right wrist.  As a result of these restrictions, Swift placed Ochoa in a light duty version of the production mechanic position.

3.  In August of 2003, Ochoa alleges that Sid Coatney ("Coatney"), his supervisor, and Vince Snyder ("Snyder"), a maintenance superintendent, began interfering with communications he made in Spanish over the two-way radio by producing static and other noise and making comments that he needed to speak in English.  Around this same time, Ochoa received a verbal warning from Coatney and a verbal warning from Snyder not to speak in Spanish over the two-way radio.

4.  On September 6, 2003, Ochoa received both a verbal and a written warning from Javier Hernandez ("Hernandez"), a maintenance supervisor, for speaking in Spanish over the two-way radio.  On the written warning, Hernandez indicated that it was being issued for Ochoa's "failure to follow instruction" by continuing to speak in Spanish over the two-way radio despite previous warnings and that such conduct in the future "could escalate to further action up to termination."

5.  Ochoa received three more verbal warnings not to speak in Spanish over the two-way radio in September of 2003.  Coatney, Snyder, and Hernandez were each responsible for one of these verbal warnings.

6.  Ochoa's job tasks, rate of compensation, and benefits did not change as a result of any of the warnings he received not to speak in Spanish over the two-way radio.  Ochoa alleges,

however, that the resulting increased difficulties in communication with other Spanish- speaking employees of Swift made it more difficult for him to do his job.

7.  Later in September of 2003, Ochoa was placed on temporary medical leave so that he could have surgery on the wrist he had injured several months earlier.

8.  On October 27, 2003, while he was on temporary medical leave, Ochoa filed a charge of discrimination with the EEOC alleging that he was discriminated against based on his national origin.  More specifically, Ochoa alleged that he and other Swift employees were being prohibited from speaking Spanish on the job.  Later, however, Ochoa alleged that a total of 31 Swift employees of Hispanic/Mexican national origin were not reprimanded in any manner for speaking in Spanish while communicating over the two-way radio.

9.  On November 6, 2003, while Ochoa was still on temporary medical leave, the written warning issued to him by Hernandez was rescinded and removed from his employment file in response to grievances that Ochoa had filed through his union.  Ochoa alleges that he did not learn that this action had been taken, however, until some time later.

10.  Ochoa returned to work at Swift on December 8, 2003 with the same medical restrictions.  These restrictions became permanent on February 16, 2004.  Ochoa alleges that he was capable of performing all of his previous job duties despite these restrictions though he admits he needed assistance from his co-workers when he was required to "constantly" lift more than 10 pounds.

11.  Ochoa alleges that he received at least one more verbal warning not to speak in Spanish over the two-way radio after he returned to work in December of 2003.  Ochoa further

alleges that Hernandez and another supervisor would say "English only, Luis" whenever they saw him in Swift's parking lot.

12.  Pursuant to Swift's "Return to Work, Restricted Duty" policy, Ochoa could only work in the light duty version of the production mechanic position for 6 months.  Ochoa then had to be placed in a full-time crewed position consistent with his permanent medical restrictions or placed on a leave of absence.  Swift alleges that it was unable to find another position for Ochoa that was consistent with his restrictions and therefore placed him on a leave of absence effective March 15, 2004.

13.  On November 5, 2004, Ochoa filed a second charge of discrimination with the EEOC alleging, in part, that Swift's actions in placing him on medical leave constituted unlawful retaliation for the earlier charge of national origin discrimination that he had filed.

## II.  Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes

4

demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

#### A.  Ochoa's Claim of National Origin Discrimination

As Swift notes in its reply to its motion, it is unclear from the pleadings filed to date whether Ochoa's theory of recovery on his claim for national origin discrimination is based on disparate treatment resulting in a tangible job detriment, disparate treatment resulting in a hostile work environment, or disparate impact. Thus, I will first analyze whether Swift is entitled to judgment as a matter of law on a claim of national origin discrimination based on disparate

treatment resulting in a tangible job detriment and address the remaining theories of recovery as necessary.

Under both Title VII and the Colorado Civil Rights Act, a plaintiff bears the initial burden of establishing a prima facie case of national origin discrimination based on disparate treatment resulting in a tangible job detriment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See also Colorado Civil Rights Comm'n v. Big O Tires, Inc.,* 940 P.2d 397, 399 (Colo. 1997) (recognizing parallels between state statute and its federal counterpart). To meet this burden, a plaintiff must generally show (1) that plaintiff is a member of a protected class; (2) that plaintiff was qualified for the position or benefit at issue; (3) that plaintiff suffered an adverse employment action; and (4) that plaintiff was treated less favorably than others outside the protected class. *Exum v. U.S.Olympic Comm.,* 389 F.3d 1130, 1134 (10th Cir. 2004). This prima facie case is, however, somewhat flexible and may be altered depending on the precise factual situation at issue. *Mohammed v. Callaway,* 698 F.2d 395, 398 (10th Cir. 1983).

Swift first argues that Ochoa cannot meet his burden of establishing a prima facie case of national origin discrimination based on disparate treatment resulting in a tangible job detriment because he cannot prove that he suffered an adverse employment action. I disagree.

In determining what constitutes an adverse employment action, I must employ a liberal approach that focuses on the unique circumstances present in this case. *Hilig v. Rumsfeld,* 381 F.3d 1028, 1033 (10th Cir. 2004). "Disciplinary proceedings, such as warning letters and reprimands, can constitute adverse employment action." *Medina v. Income Support Div.,* N.M., 413 F.3d 1131, 1137 (10th Cir. 2005). "A reprimand, however, will only constitute adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment."

6

*Id.*  A reprimand adversely affects the terms and conditions of a plaintiff's employment if it, among other things, affects the likelihood that the plaintiff will be terminated or undermines the plaintiff's current position.  *Id.*

Based on these guidelines, I conclude that there is sufficient evidence to raise a genuine factual issue as to whether the written and verbal warnings he received made Ochoa's termination from Swift more likely or otherwise undermined his position as a production mechanic. Specifically, the written warning issued by Hernandez, a supervisor, and signed by a representative of Swift's personnel department indicated on its face that Ochoa's continued communication in Spanish over the two-way radio "could escalate to further action up to termination."  While Swift emphasizes that this warning was removed from Ochoa's personnel file approximately two months later, Ochoa alleges that he did not learn that this corrective action had been taken until after he was placed on a leave of absence in March of 2004.  A continued belief that he could be terminated for speaking Spanish over the two-way radio coupled with the increased difficulty he alleges that he experienced in performing his job responsibilities could also support a finding that Ochoa's position as a production mechanic was undermined as a result of the written and verbal warnings he received.  Thus, there is a genuine factual issue as to whether Ochoa suffered an adverse employment action that precludes summary judgment on this basis.

Swift next argues that Ochoa cannot meet his burden of establishing a prima facie case of national origin discrimination based on disparate treatment resulting in a tangible job detriment because he cannot prove that he was treated less favorably than non-Hispanics employed by Swift. Again, I disagree.

Although Ochoa could arguably show that he was treated less favorably than non-Hispanics employed by Swift by presenting evidence regarding the nationalities of and the languages spoken by other Swift employees, I find such proof unnecessary under the facts and circumstances of this case.  Inherent in the very nature of the alleged discriminatory conduct at issue in this case, ie. disciplining a Hispanic employee for speaking in Spanish over the two-way radio, is a logical inference that non-Hispanic employees were not subjected to the same conduct. To allow Ochoa to proceed with his claim on the basis of this inference is entirely consistent with the flexible approach courts have taken to the elements of a prima facie case of employment discrimination derived from *McDonnell Douglas*.  *See Mohammed, supra*.  *See also Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1227 n. 6 (10th Cir. 2000)(recognzing that it may be appropriate to utilize a three-part test for discrimination claims that do not fall into any of the traditional categories (e.g., hiring or discharge) or that present unusual circumstances). Accordingly, I conclude that Swift is not entitled to judgment as a matter of law on Ochoa's claim of national origin discrimination based on his failure to present evidence that non-Hispanic employees were not similarly reprimanded.

Finally, Swift argues that a claim of national origin discrimination is based on disparate treatment that resulted in a tangible job detriment must fail in this case because there is no evidence of an intent to discriminate by Swift.  I disagree.

In order to prevail under a disparate treatment theory, a plaintiff must show, through either direct or indirect evidence, that the alleged discrimination was intentional.  *Moldonado v. City of Altus,* 433 F.3d 1294, 1307 (10th Cir. 2006).  Since Ochoa has offered no direct evidence

8

of discriminatory intent, there must be sufficient evidence from which a reasonable juror could infer the existence of such intent.  I conclude that such evidence is present in this case.

First, in view of the evidence that at least one Swift employee with whom Ochoa had to communicate spoke only Spanish, there is a genuine factual issue as to whether there was a legitimate work-related reason for prohibiting Ochoa from speaking in Spanish over the two-way radio.  Second, I must reject Swift's reliance on Ochoa's testimony that 31 other Swift employees were not reprimanded in any way for speaking in Spanish over the two-way radio to rebut discriminatory intent on its part in its actions directed at Ochoa as there is a factual dispute as to whether any of these other employees were situated similarly to him.  Based on these circumstances then, I cannot conclude as a matter of law that Ochoa's claim for national origin discrimination must fail because he cannot prove intent to discriminate by Swift.

Having concluded that Swift is not entitled to summary judgment on Ochoa's claim for national origin discrimination based on disparate treatment resulting in a tangible job detriment, it is unnecessary for me to address alternative theories of recovery on this claim at the present time.

**B.  Ochoa's Claim for Retaliation**

To establish a prima facie case of retaliation, a plaintiff must show (1) that plaintiff engaged in protected opposition to discrimination; (2) that plaintiff suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action.  *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001).  Once a plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action .  *Id.*  The plaintiff  must

9

then respond by demonstrating that the defendant's asserted reasons for the adverse action are pretextual. *Id.*

Swift first argues that Ochoa cannot establish a prima facie case for retaliation because he cannot demonstrate a causal connection between his placement on a leave of absence in March of 2004 and his filing of a charge of discrimination with the EEOC approximately 5 months earlier. I disagree.

A causal connection between an adverse employment action and protected conduct is established through evidence that justifies an inference of retaliatory motive. *Bullington v. United Airlines, Inc.,* 186 F.3d 1301, 1320 (10th Cir. 1999). Such an inference may be based on close temporal proximity between the adverse employment action and the protected conduct. *Id.* Unless there is very close temporal proximity between the two events, however, the plaintiff must present additional evidence to establish a casual connection. *O'Neal*, *supra*, 237 F.3d at 1253.

Swift argues that 5 months is too long a period of time to support an inference of wrongful retaliation on the basis of temporal proximity alone. There is ample support for this argument. *See e.g. Miller v. Automobile Club of New Mexico,* 420 F.3d 1098, 1121 (10th Cir. 2005) (six month period between allegations of discrimination and adverse employment action was too long to satisfy causal connection prong of prima facie case). There is likewise ample support for calculating the time that lapsed between the protected conduct and alleged adverse employment action based on when an EEOC claim is filed as opposed to when it is resolved. *See e.g. Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999). Accordingly, Ochoa must present additional evidence to support a causal connection between his placement on medical leave and his filing of a discrimination claim with the EEOC.

10

To establish retaliatory motive on Swift's part, Ochoa alleges, among other things, that he remained capable of performing his job as a production mechanic notwithstanding his medical restrictions and that Swift failed to consider him for other positions that were available and for which he was qualified. Ochoa presents sufficient evidence in support of these allegations to raise a factual issue as to whether he could have continued his employment at Swift as either a production mechanic or in some other capacity. If the jury was to find in Ochoa's favor on this issue, then it could likewise conclude that there was a causal connection between Ochoa's filing of a discrimination charge with the EEOC and his placement on medical leave. Accordingly, I conclude that there is sufficient evidence to support a prima facie case of retaliation and that Swift is not entitled to summary judgment on this basis.

Swift next argues that even if he can establish a prima facie case of retaliation, Ochoa cannot establish that its proffered legitimate, non-discriminatory reason for placing Ochoa on a leave of absence was pretextual. Again, I disagree.

Swift contends that it placed Ochoa on medical leave because he was unable to perform the essential functions of his position as a production mechanic as a result of his medical restrictions. In response, Ochoa argues that this proffered reason is pretextual because he was capable of performing his job as a production mechanic notwithstanding his medical restrictions and was also capable of performing other jobs that were open and available to him at Swift during the applicable time period. As already set forth above, Ochoa has presented sufficient evidence in support of these allegations to raise a factual issue as to whether he could have continued his employment at Swift as a production mechanic or in some other capacity. If the jury was to find in Ochoa's favor on this issue, then it could likewise conclude that Swift's proffered reason for

11

placing him on medical leave was pretextual.  Swift is therefore likewise not entitled to summary

judgment on Ochoa's claim for retaliation on the basis that he cannot establish pretext.


For the reasons set forth above, , IT IS ORDERED that Swift's Motion for Summary

Judgment [Doc # 14] is DENIED in its entirety.


Dated: May     9    , 2006 in Denver, Colorado.

                                                      BY THE COURT:


                                                          s/Lewis T. Babcock
                                                      LEWIS T. BABCOCK, CHIEF JUDGE